## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| AGUSTIN AGUIRRE, KENNY MORGAN, RYAN-ASHLEY JACKSON, and TRULEY WATKINS<br><br>Plaintiffs,<br><br>v.<br><br>ITT EDUCATIONAL SERVICES, INC.<br><br>Defendant. | Case No. 1:16-cv-00734<br><br>**PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

AGUSTIN AGUIRRE, KENNY MORGAN, RYAN-ASHLEY JACKSON, and TRULEY WATKINS ("Plaintiffs") bring this action against Defendant ITT EDUCATIONAL SERVICES, INC. ("Defendant") to stop Defendant's practice of making illegal telemarketing calls to the cellular telephones of Plaintiffs, and to obtain redress for injuries caused by Defendant's conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### INTRODUCTION

1.      "The right to be let alone is indeed the beginning of all freedom."[1]  Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), Chapter 302 of the TEX. BUS. & COM. CODE - the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA"), and TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA").

2.      Defendant is a for profit technical educational institute that engages in reckless and aggressive telemarketing practices in an effort to register students, outright ignoring controlling

---

[1] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952) (Douglas, J., dissenting).

federal and state law and the rights of the called parties.

3.       Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA.  Defendant made the unauthorized and illegal calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of harassing Plaintiffs into purchasing Defendant's services.  Defendant also called Plaintiffs after they clearly stated they did not wish to be called again.  Defendant made these illegal calls in an *en masse* effort to drive enrollment numbers while openly flaunting the confines of the TCPA.

4.       Finally, Defendant's conduct violates the Texas TCPA and, in turn, the DTPA. Accordingly, Plaintiffs are entitled to recover actual damages, attorneys' fees, costs of court, expert fees, deposition costs, and treble damages for each and every such violation.

## PARTIES

5.       Plaintiff AGUSTIN AGUIRRE is a natural person and citizen of the State of Texas who resides in Austin, Travis County, Texas.

6.       Plaintiff KENNY MORGAN is a natural person and citizen of the State of Ohio who resides in West Alexandria, Preble County, Ohio.

7.       Plaintiff RYAN-ASHLEY JACKSON is a natural person and citizen of the State of Pennsylvania who resides in Philadelphia, Philadelphia County, Pennsylvania.

8.       Plaintiff TRULEY WATKINS is a natural person and citizen of the State of California who resides in Richmond, Contra Costa County, California.

9.       Defendant ITT EDUCATIONAL SERVICES, INC. is a corporation under the laws of the State of Delaware.  Defendant maintains its principal office at Carmel, Indiana and may be served with process by serving its Registered Agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

2

10.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

13.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing,

consent must be in writing.[2]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

14.    Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

15.    The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

16.    Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."  *Id*.  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry.  *Id.* at § 64.1200(d)(3), (6).  Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA.  The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

17.    Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

5

18.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**The Texas TCPA & DTPA**

19.     Enacted in 1978, Chapter 302 of the TEX. BUS. & COM. CODE is the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA").  A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

> (a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).
>
> (b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter.

TEX. BUS. & COM. CODE § 302.303; *see also* TEX. BUS. & COM. CODE § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).  The Texas TCPA shall be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business. TEX. BUS. & COM. CODE § 302.003.

20.     The Texas TCPA also provides much harsher civil penalties than the federal TCPA:

> (a) A person who violates this chapter is subject to a civil penalty of not more than **$5,000 for each violation.**
>
> ....................................................................
>
> (d) The party bringing the action also is entitled to recover **all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.**

TEX. BUS. & COM. CODE § 302.302 (emphasis added).  The plaintiff can recover additional damages of **up to three times the amount of economic and mental anguish damages** for a DTPA claim. TEX. BUS. & COM. CODE § 17.50(b)(1) (emphasis added).  Economic damages can be trebled if the defendant knowingly or intentionally violated the DTPA. *Id.*; *Bossier Chrysler-*

6

*Dodge II, Inc. v. Riley*, 221 S.W.3d 749, 759 (Tex. App.–Waco 2007, pet denied).  Mental-anguish damages can be trebled if the defendant acted intentionally. TEX. BUS. & COM. CODE § 17.50(b)(1).

### FACTS SPECIFIC TO PLAINTIFF AGUSTIN AGUIRRE

21.    Beginning around January 2016, Aguirre began to receive calls from the number "800-818-1582", a number associated with Defendant.  Since that time, Aguirre has received at least 19 calls from Defendant.

22.    Aguirre received all calls described above on his cellular telephone assigned a number ending in 4500.

23.    Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Aguirre's prior express written consent.

24.    When Aguirre answered the calls, there was "silence for a while, then a person."

25.    Aguirre asked Defendant's live representative to cease the harassing phone calls and take him off their list, but Defendant continued to call.  On at least one occasion, despite Aguirre's request to not be called, Defendant called Aguirre back immediately after a call was ended.

26.    The purpose of the calls was a marketing pitch designed to encourage Aguirre to enroll at ITT Technical Institute.  The calls encouraged Aguirre to "go back to school."

27.    To the extent Aguirre provided consent to be called, he revoked any consent.

28.    Aguirre felt the calls were an invasion of his privacy and wanted Defendant to stop calling.  Defendant ignored Aguirre's multiple requests and continued to call him.

29.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Aguirre believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

30.     Defendant's live representative admitted to Aguirre on one occasion that his number was dialed using an ATDS.

31.     On information and belief, Defendant's ATDS called Aguirre on every occasion.

32.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.  Aguirre has been damaged for accumulated usage minutes attributed to Defendant's illegal calls.

33.     Aguirre is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 4500.

34.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

35.     Aguirre did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

36.     All calls Defendant made to Aguirre violate 47 U.S.C. § 227 and Chapter 302 of the TEX. BUS. & COM. CODE.

## FACTS SPECIFIC TO PLAINTIFF KENNY MORGAN

37.     Beginning around April 2016, Morgan began to receive calls from the number "800-818-1582", a number associated with Defendant.  Since that time, Morgan has received at least 21 calls from Defendant.

38.     Morgan received all calls described above on his cellular telephone assigned a number ending in 8939.

39.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Morgan's prior express written consent.

40.     When Morgan answered the calls, there was "a pause and then a rep or recording." Morgan distinctly noticed call center noise in the background.

41.     Morgan asked Defendant's live representative to stop calling him.   Morgan explicitly revoked consent to receive calls using an ATDS to one of Defendant's live representatives.

42.     The purpose of the calls was a marketing pitch designed to encourage Morgan to enroll at ITT Technical Institute.  The calls encouraged Morgan to "go back to school."

43.     To the extent Morgan provided consent to be called, he revoked any consent.

44.     Morgan felt the calls were an invasion of his privacy and wanted Defendant to stop calling.  Defendant ignored Morgan's multiple requests and continued to call him.

45.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Morgan believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

46.     On information and belief, Defendant's ATDS called Morgan on every occasion.

47.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.  Morgan has been damaged for accumulated usage minutes attributed to Defendant's illegal calls.

48.     Morgan is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8939.

49.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

50.     Morgan did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

51.     All calls Defendant made to Morgan violate 47 U.S.C. § 227 and Chapter 302 of the TEX. BUS. & COM. CODE.

## FACTS SPECIFIC TO PLAINTIFF RYAN-ASHLEY JACKSON

52.     Beginning around November 2015, Jackson began to receive calls from the number "215-413-4300", a number associated with Defendant.  Since that time, Jackson has received at least 33 calls from Defendant.

53.     Jackson received all calls described above on his cellular telephone assigned a number ending in 2915.

54.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Jackson's prior express written consent.

55.     When Jackson answered the calls, there was dead air before he was transferred to a live representative or a recording.

56.     Jackson asked Defendant's live representative to stop calling him several times. Jackson explicitly revoked consent to receive calls using an ATDS to one of Defendant's live representatives.

10

57. Yet, Defendant continued to call Jackson on a daily basis.

58. The purpose of the calls was a marketing pitch designed to encourage Jackson to enroll at ITT Technical Institute. The calls encouraged Jackson to "go back to school."

59. Jackson informed Defendant's live representative that he was not interested in their offer and to cease the harassing phone calls.

60. To the extent Jackson provided consent to be called, he revoked any consent.

61. Jackson felt the calls were an invasion of his privacy and wanted Defendant to stop calling. Defendant ignored Jackson's multiple requests and continued to call him.

62. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Jackson believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

63. On information and belief, Defendant's ATDS called Jackson on every occasion.

64. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number. Jackson has been damaged for accumulated usage minutes attributed to Defendant's illegal calls.

65. Jackson is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 2915.

66. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

67. Jackson did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

11

68.     All calls Defendant made to Jackson violate 47 U.S.C. § 227 and Chapter 302 of the TEX. BUS. & COM. CODE.

## FACTS SPECIFIC TO PLAINTIFF TRULY WATKINS

69.     Beginning around February 2016, Watkins began to receive calls from the number "510-553-2800", a number associated with Defendant.  Since that time, Watkins has received at least 13 calls from Defendant.

70.     Watkins received all calls described above on her cellular telephone assigned a number ending in 8284.

71.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Watkins's prior express written consent.

72.     When Watkins answered the calls, there was a momentary pause before someone began speaking.  Watkins distinctly noticed call center noise in the background.

73.     Watkins repeatedly told Defendant to stop calling her and that she did not want or need their services.  She revoked her consent several times before purchasing, downloading, and using an application that blocks the calls.  Watkins has been forced to pay for this application as a result of Defendant's abusive tactics.

74.     The purpose of the calls was a marketing pitch designed to encourage Watkins to enroll at ITT Technical Institute.  The calls encouraged Watkins to "go back to school."

75.     To the extent Watkins provided consent to be called, she revoked any consent.

76.     Watkins felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Watkins's multiple requests and continued to call her.

12

77.     Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Watkins believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

78.     On information and belief, Defendant's ATDS called Watkins on every occasion.

79.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.  Watkins has been damaged for accumulated usage minutes attributed to Defendant's illegal calls.  Watkins has also been forced to pay for an application on her cellular telephone that blocks the continued illegal harassing calls.

80.     Watkins is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8284.

81.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

82.     Watkins did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

83.     All calls Defendant made to Watkins violate 47 U.S.C. § 227 and Chapter 302 of the TEX. BUS. & COM. CODE.

### FIRST CAUSE OF ACTION
#### (VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

84.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

85.     The foregoing acts and omissions of Defendant constitute numerous and multiple

violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

86.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

87.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### (KNOWING AND/OR WILLFUL VIOLATION OF
### THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

88.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

89.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

90.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

91.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE TEXAS REGULATION OF TELEPHONE SOLICITATIONS
### Chapter 302 of the TEX. BUS. & COM. CODE)

92.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

93.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, including but not limited to each and every one of the provisions of Chapter 302 of the TEX. BUS. & COM. CODE.

94.     As a result of Defendant's violations of the Texas TCPA, Plaintiffs are entitled to an award of statutory damages in the amount of $5,000, for each and every violation, and actual damages including mental anguish, all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

### FOURTH CAUSE OF ACTION
**(VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
Chapter 17 of the TEX. BUS. & COM. CODE)**

95.     Plaintiffs hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

96.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, which automatically results in a violation of the DTPA.

97.     A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

> "(a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).
>
> (b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter."

TEX. BUS. & COM. CODE § 302.303; *see also* TEX. BUS. & COM. CODE § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).

98.     As a result of Defendant's violations of the DTPA, Plaintiffs are entitled to an award of actual damages, treble damages for the Texas TCPA violations ($15,000 per violation),

costs of court, and attorney's fees.

## ATTORNEY'S FEES

99.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

100.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

101.    Plaintiffs demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $5,000.00 in statutory damages, for each and every violation, pursuant to Chapter 302 of the Texas Business & Commerce Code, *et seq*.;

- Actual damages, including mental anguish.

- An award of $15,000.00 in statutory damages, for each and every violation, pursuant to Chapter 17 of the Texas Business & Commerce Code, *et seq*.;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendant from

16

engaging in abusive and oppressive telemarketing practices as outlined in this Complaint.

- Attorneys' fees, costs and any and all other relief deemed just and proper.

Dated: June 23, 2016                          Respectfully Submitted,

                                              */s/ Jarrett L. Ellzey*_____
                                              W. Craft Hughes
                                              Jarrett L. Ellzey
                                              **HUGHES ELLZEY, LLP**
                                              2700 Post Oak Blvd., Ste. 1120
                                              Galleria Tower I
                                              Houston, TX 77056
                                              Phone: (713) 554-2377
                                              Fax: (888) 995-3335
                                              E-Mail: craft@hughesellzey.com
                                                       jarrett@hughesellzey.com

                                              Bryant Fitts
                                              **FITTS LAW FIRM, PLLC**
                                              2700 Post Oak Blvd., Suite 1120
                                              Houston, Texas 77056
                                              Phone (713) 871-1670
                                              Fax (713) 583-1492
                                              E-mail: bfitts@fittslawfirm.com

                                              **ATTORNEYS FOR PLAINTIFFS**